NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3479-23

R.H.,

    Plaintiff-Appellant,

v.

M.G.,

    Defendant-Respondent.

_____

Submitted July 29, 2025 – Decided August 29, 2025

Before Judges Sumners and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0088-06.

R.H., appellant pro se.

Respondent has not filed a brief.

PER CURIAM

    Plaintiff R.H. appeals from an April 11, 2024 order granting defendant M.G.'s motion for plaintiff to pay the balance of their son's college tuition for

fall 2023 and spring 2024 ($2,357.85 and $87.85), continuation of child support, and the denial of plaintiff's cross-motion to emancipate their son.[1] Plaintiff additionally appeals from the motion court's subsequent June 14, 2024 order denying his motion for reconsideration.[2] Plaintiff principally argues the court erred by failing to consider critical evidence showing changes in his finances, including the failure of his trucking business in granting defendant's motion. We affirm in part and remand in part.

Plaintiff and defendant are the parents of one child, Ryan, who was born in 2005. The parties were never married and lived together for only a short time, but a child support and parenting time order has been in place for almost all of Ryan's life.[3]

Ryan's success as a student is not in dispute. Ryan has received scholarships, grants, and personal loans to cover most of his tuition at Montclair State University (Montclair), with the exception of two terms in 2023 and 2024, where those awards did not cover his entire college costs.

---

[1] We use initials and a pseudonym to protect the privacy of the parties.

[2] Plaintiff appeals "the entire decision," which we infer to include both the motion granting defendant child support and tuition contribution, and the motion for reconsideration.

[3] The original child support order is not part of the record on appeal.

A-3479-23

On September 8, 2023, defendant moved for continuation of child support and contribution to college expenses. Plaintiff cross-moved for emancipation and other relief. At the time of defendant's motion for continued child support and payment towards their child's outstanding tuition, defendant was a recipient of Social Security Disability, receiving $223 per week and plaintiff operated his own trucking business.

On January 9, 2024, an initial hearing was held on the parties' respective applications. The motion court adjourned the hearing for twenty days and ordered plaintiff to submit his financials within fourteen days, including a profit and loss statement for 2023, all tax returns for 2020, 2021, and 2022, and his three latest paychecks.

On the next hearing date, January 29, 2024, the motion court heard the arguments of the parties and reserved decision. On April 11, 2024, the court issued an order and written statement of reasons granting defendant's motion for ongoing child support and college contribution, and denying plaintiff's application for Ryan's emancipation. On the emancipation issue, the court concluded that "[a]lthough [p]laintiff's relationship with the child is not close, [the] parties have not expressed that the child deliberately cut contact or expressed a lack of affection for . . . [p]laintiff."

As to defendant's application for tuition reimbursement and ongoing child support, the court determined it was "equitable to grant such application since [p]laintiff was informed of the child's acceptance to college and the proposed tuition before September 2023, when the semester commenced."  The court addressed the Newburgh v. Arrigo factors:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.
>
> [88 N.J. 529, 545 (1982).]

4

The court found persuasive that Ryan had informed plaintiff of his admittance and selection of Montclair due to the financial package offered and the fact that plaintiff himself had attended Montclair. Moreover, the court considered Ryan's use of his high school academic achievements to earn scholarships, grants, and other forms of financial aid to cover the vast majority of his college tuition and costs. The court then reasoned that plaintiff had the funds needed to cover the outstanding modest costs of Ryan's attendance at Montclair based on its review of plaintiff's 2023 profit and loss statements, which indicated a gross income of $49,059, and company earnings of $114,181 in 2022.

In denying plaintiff's motion for reconsideration, the court thoroughly examined plaintiff's argument that the court had misclassified his employment. The court stated, "[a]ccording to [p]laintiff, he is not a truck driver, but a carrier. Yet, in [p]laintiff's 2023 tax return filed under this motion, it states that he is self-employed, and under his Schedule C, his business name states Shipping Containers Driver." The court reasoned that:

> In any regard, the discrepancy in such details does not render the [c]ourt's decision as palpably incorrect, because . . . [p]laintiff owned his own trucking company, which earns substantial income, and the [p]laintiff's 2022 tax return which was submitted before

the April 11th, 2024 order, showed that [p]laintiff owned 100 percent of the company's shares.

Generally, our review of a Family Part's findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). "Findings by the trial court are binding on appeal when supported by adequate, substantial, [and] credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, we owe no special deference to the motion court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Conclusions of law are reviewed de novo. T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017). In addition, we review a family court's decision to modify child support pursuant to an abuse of discretion standard. J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)).

"A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an

impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." R.Y., 242 N.J. at 65 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

First, we address the issue of whether the child is emancipated. As we established in Ricci v. Ricci, whether a child is emancipated "must be resolved prior to awarding support, including payment of college costs." 448 N.J. Super. 546, 557 (App. Div. 2017). "One of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated, regardless of whether the children live with one, both, or neither parent." Id. at 570 (quoting Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004)).

Emancipation is a legal determination, of which "[t]he essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtain[ed] an independent status of his or her own." Ricci at 572 (quoting Fillippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997)). When a child is deemed emancipated, "the parent . . . is relieved of the burden of support, and the child is no longer entitled to support." Fillippone, 304 N.J. Super. at 308. Determining whether a child is emancipated is a "fact-sensitive analysis." Newburgh, 88 N.J. at 543. Prima facie evidence of emancipation arises when the child turns eighteen years old. Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006); see also N.J.S.A. 9:17B-3. "Once the presumption arises, the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation." Ricci, 448 N.J. Super. at 572 (citing Fillippone, 304 N.J. Super. at 308). Moreover, we have advised that the "critical evaluation for emancipation determinations typically necessitates a plenary hearing, especially 'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve." Llewlyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)).

A-3479-23

There is a presumption of emancipation because Ryan is now twenty years old. Ricci, 448 N.J. Super. at 572 ("A parent establishes 'prima facie, but not conclusive, proof of emancipation' when a child reaches the age of majority, now eighteen") (quoting Dolce, 383 N.J. Super. at 17). Thus, the burden shifted to defendant to prove that he was not "beyond the sphere of influence and responsibility exercised by a parent," and had not "obtain[ed] an independent status of [his] own." Fillippone, 304 N.J. Super. at 308.

On appeal, plaintiff maintains that Ryan is emancipated and denies any responsibility to pay ongoing child support. This argument is meritless. From our de novo review of the record, plaintiff argues only that this is a case of extreme alienation "where the non[-]custodial parent[, plaintiff,] has been alienated by the other parent, and has been treated like a wallet" which should result in the child's emancipation.[4] Moreover, there is no "genuine and substantial factual dispute," to necessitate a plenary hearing on emancipation. Shewchuk, 440 N.J. Super. at 217. The record shows Ryan's expenses have been covered by child support from plaintiff, defendant's disability payments, and a loan from his grandmother. Accordingly, we are convinced plaintiff's

---

[4] The record does not include plaintiff's brief on the emancipation motion and plaintiff's counsel did not address the emancipation issue at oral argument.

argument lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

We next address plaintiff's argument the court abused its discretion in granting a continuation of child support for their son while a student at Montclair. In his brief, plaintiff raises a number of arguments in support of this claim, including that Ryan's decision to attend Montclair was made without consulting him, both parents were required to participate in the financial aid application process, Ryan did not need to live on campus, and his trucking business is now defunct as a result of the COVID-19 pandemic.

New Jersey's Legislature and courts "have long recognized a child's need for higher education." Gac v. Gac, 186 N.J. 535, 542 (2006). As such, support orders are "always subject to review and modification on a showing of 'changed circumstances.'" Lepis v. Lepis, 83 N.J. 139, 146 (1980) (quoting Chalmers v. Chalmers, 65 N.J. 186, 192 (1974)). "The party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved." Id. at 157 (quoting Martindell v. Martindell, 21 N.J. 341, 353 (1956)).

Absent an enforceable agreement apportioning child support and college costs, "a trial court should balance the statutory criteria of N.J.S.A. 2A:34-

23(a) and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Ibid. The court must consider each factor. See Raynor v. Raynor, 319 N.J. Super. 591, 616-17 (App. Div. 1999) (reversing a trial court's decision as to college contribution that gave only "cursory attention to" a certain Newburgh factor). While "the parents' ability to pay is clearly the most significant" of the Newburgh factors, a court should not consider it "to the exclusion of all others." Id. at 617 (citation omitted).

Accepting that his wife might own part of his company, the court found that it was proper to consider the resources available to plaintiff, "including th[ose] of his current spouse." The court further acknowledged that plaintiff's 2023 tax returns could not have been submitted at the time of the original motion because they were not yet prepared, nevertheless, the court reasoned that the issue is "whether its in the interest of justice to reconsider the [c]ourt's decision in awarding child support and tuition payments based on the new information before the [c]ourt." The court stated:

> Now although [p]laintiff's 2023 tax returns could not have been provided prior to the [c]ourt's issuance of its order, the [c]ourt considered the information available, namely the [p]laintiff's profit and loss statement for

11

2023 and [p]laintiff's 2022 tax return. Also, the [c]ourt considered the circumstances of the child and that of the parties. Although [p]laintiff liquidated his assets and dissolved his company, he is still capable of finding employment, he obtained a college degree and has the flexibility to change careers. Although [p]laintiff asserts that his business suffered from the freight bubble bursting, he has shown that he can successfully grow and operate a business earning over $100,000 on a consistent basis for several years. It would not be the best interest of the unemancipated child herein to not be afforded such liberties as [p]laintiff . . . . Despite the unfortunate demise of [p]laintiff's business, he still has the option to pursue other career options. For these reasons, the [c]ourt, while sympathetic to [p]laintiff's economic hurdle, does not find it's in the interest of justice to reconsider the order.

Applying the above principles, we observe no abuse of discretion in the court's conclusion plaintiff must satisfy Ryan's outstanding tuition payments for 2023-2024. We reach this conclusion having reviewed the record which shows the court thoughtfully considered and applied the applicable Newburgh factors and concluded that plaintiff is "able to pay the requested cost." The court based its decision on plaintiff's reported 2022 business income of $114,181 and personal income of $25,640. The court further noted that plaintiff benefits from his child by claiming him on his taxes and concluded plaintiff's 2022 income suggests that he has the ability to earn a higher income than he does today.

A-3479-23

We, however, depart from the court's conclusion plaintiff is responsible for any future outstanding tuition balances through 2027. In view of plaintiff's argument and proof showing a decline in his business income in 2023, which may constitute a change in circumstances, we conclude a more thorough analysis is required as to plaintiff's ability to contribute toward Ryan's future college expenses. See Lepis, 83 N.J. at 146.

We reach a similar conclusion as to the court's determination plaintiff is required to pay ongoing child support under the motion court's existing order. The court ordered plaintiff continue to pay "$125 per week" and an additional $20 per week towards any arrears until fully paid.

Generally, in determining child support in the context of college tuition, courts should not utilize the child support guidelines and instead follow the factors enumerated in N.J.S.A. 2A:34-23a, as "the child support obligation is considered in light of all the financial circumstances of the parties and children." Raynor, 319 N.J. Super. 591, 614 (App. Div. 1999). Importantly, although there is no presumption that child support lessens when a child begins college, the courts must engage in a fact-sensitive analysis utilizing the factors in N.J.S.A. 2A:34-23a. Further, Rule 1:7-4 provides courts must "find the facts and state its conclusions of law" for orders and decisions.

13

Here, in contrast to the court's analysis and application of the Newburgh factors in support of its decision to hold plaintiff liable for Ryan's then-outstanding college tuition, the court mistakenly applied its discretion by failing to set forth any basis for continuing child support at the previously established $125 per week. We therefore remand for the court to address the relevant N.J.S.A. 2A:34-23a factors as to ongoing child support.

In sum, we affirm in part as to the court's grant of defendant's motion for plaintiff to pay the outstanding balance of Ryan's tuition for 2023-2024 and denial of plaintiff's cross-motion to emancipate Ryan, and remand in part as to the court's order compelling payment of Ryan's tuition through 2027 and continuation of the prior child support order for further proceedings as determined by the motion court. We do not retain jurisdiction.

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3479-23